IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

NICHOLAS ELY,

        Petitioner,

vs.

TODD WASMER, Warden Tecumseh Correctional Institution and ROB JEFFREYS, the Director of the Nebraska Department of Correctional Services,

        Respondents.

8:21CV00095

**MEMORANDUM AND ORDER**

This matter is before the Court on preliminary review of Petitioner Nicholas Ely's ("Ely" or "Petitioner") Petition for Writ of Habeas Corpus, Filing No. 1, brought pursuant to 28 U.S.C. § 2254. Ely was convicted by jury trial in Nebraska State District Court of first-degree felony murder, Neb. Rev. Stat. 28-303(1) or 28-303(2)), and use of a firearm to commit a felony in October 2012, Neb. Rev. Stat. 28-1205(1)(a) & (c). Filing No. 1 at 1 and 6. Ely was then sentenced to life imprisonment for first-degree felony murder and five years of imprisonment for use of a weapon to commit a felony, to run consecutively. *Id.* at 7. Ely's conviction was later affirmed by the Supreme Court of Nebraska in early 2014. *Id.* at 8. *State v. Ely*, 841 N.W.2d 216 (Neb. 2014). Ely made post-conviction motions[1] to the Supreme Court of Nebraska which were all denied. Filing No. 1 at 20. Petitioner

---

[1] *See* Filing No. 1 at 19–20 for detailed timeline of Petitioner's post-conviction actions. After the Nebraska Supreme Court affirmed his conviction and sentences, Petitioner filed a timely pro-se Motion for post-conviction relief on July 31, 2014. This motion was denied without an evidentiary hearing and Petitioner timely filed an appeal. On July 13, 2020, the Nebraska Supreme Court affirmed the denial of post-conviction relief. One week later, Petitioner filed a timely motion for rehearing with the Nebraska Supreme Court on July 20, 2020, with an accompanying brief filed September 3, 2020. Ely's final motion for rehearing was denied on November 4, 2020.

1

Ely's Writ of Habeas Corpus alleges that his requests to represent himself due to dissatisfaction with appointed counsel in trial were denied and violated his constitutional rights.

This matter is before this Court for initial review of Ely's Petition for a Writ of Habeas Corpus ("petition") under 28 U.S.C. § 2254. Filing No. 1. Under § 2254, a district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Rule 4 of the Rules Governing § 2254 Cases requires the Court to conduct an initial review of the petition and to summarily dismiss the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2254. If the Court does not summarily dismiss the petition, it "must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the [Court] may order." *Id.*

## I. BACKGROUND

### a. Underlying Crime

On July 6, 2011, Ely gathered with his friends Marqus Patton ("Patton"), Ryan Elseman ("Elseman"), Drake Northrop ("Northrop"), and a minor named Emily G. ("Emily"), with plans of obtaining marijuana and going swimming at Patton's place of residence. *Ely*, 841 N.W.2d at 219. Because of her previous purchases from him, Emily suggested getting the marijuana from a man named Kristopher Winters ("Winters"). *Id.* While traveling to Winters's home, however, the group decided they would instead rob Winters. *Id.*

Upon arrival, Emily first entered the basement of Winters's home alone. She sent a text message to the others waiting behind in the car alerting them that two other people besides Winters were in the home. *Ely*, 841 N.W.2d at 220. These other persons were Eric Brusha, a friend of Winters's who was with him in the basement, and Kellie Winters, Kristopher Winters's mother, who was upstairs. *Id.* Following this signal from Emily, the rest of the group entered the basement of the home, brandishing two black revolvers, intending to rob Winters. *Id.* Upon entering the room, Elseman pointed his weapon at Winters to initiate the robbery when Winters responded by rushing after Elseman, resulting in a struggle. *Id.* As Elseman and Winters fought, Patton then struck Winters on the head with his gun and told Elseman to shoot Winters, which he did. *Id.* Despite his injury, Winters pursued his attackers with a stool or other object, but he was shot a second time which proved fatal. *Id.*

Ely and his friends fled the scene immediately following the botched robbery and shooting. *Ely*, 841 N.W.2d at 220. Upon hearing the loud noise in the basement, Kellie Winters called downstairs to her son and Brusha told her he was hurt. *Id.* Kellie then went outside to see the three men running from the home and Emily on the driveway. *Id.* Kellie went outside and had a brief altercation with Emily on the driveway and returned to the home to find her bleeding son in the basement. *Id.* Kristopher Winters died before help could arrive on the scene, and an autopsy revealed the gunshot wound in his neck caused a fatal hemorrhage. *Id.*

Ely, Northrop, Elseman, and Patton left the area in the vehicle while Emily fled on foot. She was apprehended by police in the area before joining the rest of the group. *Ely*, 841 N.W.2d at 220. The group returned to Patton's home, and when joined by another

friend Nicholas Palma, Ely told him how the robbery went poorly and, in the process, Winters was shot in the neck. *Id.* at 220–21. A few days later, Ely left the Omaha area and went to Sioux City, Iowa where he confessed to two other friends about a robbery that went downhill when the victim fought back. *Id.* at 221.

Later, following a jury trial, Ely was convicted of first-degree murder and use of a deadly weapon to commit a felony. *Id.* at 219.

### b. Procedural History

#### (1) Initial Postconviction Appeal

Ely filed a pro se motion for postconviction relief wherein he alleged numerous claims of ineffective assistance of trial and appellate counsel (he had the same attorneys for both his trial and his first appeal) and claims of trial court error. Filing No. 10-2 and Filing No. 10-18 at 2–26. The district court denied his motions without a hearing. Ely appealed the state court judgment to the Nebraska Supreme Court. The Supreme Court, however, found his arguments regarding his alleged denial to dismiss counsel and proceed pro se were procedurally barred, as Ely failed to raise them on direct appeal. Filing No. 10-2 at 6–7. The Supreme Court reversed and remanded for an evidentiary hearing on two of Ely's ineffective assistance claims. *Id.* at 19.

#### (2) Second Postconviction Appeal

The state court judge then held an evidentiary hearing and determined that Ely was not entitled to postconviction relief. Filing No. 10-3 at 4, Filing No. 10-19 at 25–27. The court found that raising the issue on direct appeal would not have been successful, and the appellate counsel was not ineffective. The court also stated that Ely's failure to raise the issue after his motion to dismiss counsel was overruled "could equate to a waiver

of that issue." *Id.* Ely appealed this judgment to the Nebraska Supreme Court. The Court affirmed the district court. Filing No. 10-3 at 9. The Supreme Court determined that Ely did not clearly and unequivocally assert his right to self-representation as required by *Faretta v. California*, 422 U.S. 806 (1975). *Id.* at 6–9.

The District Court of Douglas County, Nebraska ("District Court") held the evidentiary hearing on November 2, 2017, and the deposition of both Ely and Mary Gryva, Ely's initial attorney in the trial and on the first appeal, were presented as evidence. Filing No. 10-25. The District Court denied post-conviction relief, finding that "the issue on direct appeal would not have been successful and, therefore, appellate counsel was not ineffective." The District Court also determined that since Ely did not re-assert "the issue of representing himself after the motion to dismiss counsel was overruled," his request could be equated "to a waiver of that issue." Filing 10-19 at 27. Thereafter, Ely filed his second appeal arguing that appellate counsel was ineffective for failing to argue that the district court erred in denying him the right to proceed pro se. Filing No. 10-11. The Nebraska Supreme Court denied the motion to vacate and set aside. Filing No. 10-3.

### c. *Current habeas petition*

Ely filed this habeas corpus pursuant to 28 U.S.C. § 2254. Filing No. 1. Ely states that: (1) "Petitioner has been denied his constitutional right to self-representation at trial as guaranteed under the Sixth and Fourteenth Amendments of the United States Constitution and the decision in *Faretta*, 422 U.S. 806, *McKaskle v. Wiggins*, 465 U.S. 168 (1984)," and (2) "Petitioner has been denied his constitutional right to effective assistance of appellate counsel on direct appeal under the Sixth and Fourteenth Amendments of the United States Constitution because of appellant's deficient

5

performance and to the prejudice of Mr. Ely for failure to raise an assignment of error the denial of the right to self-representation under the decision in *Faretta*, 422 U.S. 806, *McKaskle*, 465 U.S. 168. . .." Filing No. 1 at 14.

### d. *Petitioner's Desire to Represent Himself*

Ely was scheduled for trial on October 1, 2012. On August 21, he filed a motion to dismiss his counsel and to appoint himself pro se. He asked the court to appoint him as his own counsel but also asked for help/advisory counsel appointed for him. At the same time, he moved to continue trial, stating he needed more time to prepare for trial. He stated that "I feel like I need to go pro se and to get a continuance." Filing No. 10-20 at 15, lines 18–20. The district court said "I don't see any benefit to you proceeding pro se .... [T]hese are serious charges. And I still think you need the advice of counsel. So, I'm going to deny your motion." *Id.* at 12, lines 4–6. The court also denied his motion to continue. The week before trial started, Ely filed an additional motion to dismiss counsel and appoint new counsel, stating that his "new lawyer needs time to go over [d]iscovery and put in motions." Filing No. 10-25 at 2. Trial began as scheduled, and Ely was represented by counsel.

Counsel representing Ely in this § 2254 petition contend that Ely clearly requested self-representation and further argues that Ely's desire to represent himself was clear and unequivocal. Filing No. 10-12 at 11. Ely relies on a statement in support of his claims set forth in the State's brief:

> Based on the trial record, if appellate counsel had raised the district court's denial of Ely's August 21st motion, there is a reasonable probability that this Court would have reversed and remanded the matter for a new trial. However, the analysis does not end with a finding of prejudice. Rather, Ely's claim is without merit because he did not prove deficient performance on the part of his appellate counsel.

6

Filing 10-12 at 11. However, counsel for the State argues that this was "structural error", but not deficient performance from trial counsel. Filing No. 28 at 2. The State suggested that after Ely's initial request, both trial counsel (Gryva and Alan Stoler) met with Ely, and based on the conversation they had, did not feel Ely really wanted to represent himself, so Gryva did not feel a need to raise the issue. Filing No. 10-12 at 9–10. Therefore, the State argues, counsel was not ineffective. Id. at 16–17.

The State discussed this argument in its opening statement before the Nebraska Supreme Court in oral argument. The State indicated:

> He has had the constitutional right to represent himself at trial. He had to assert that right timely, clearly, and unequivocally. And frankly, that's why I understood this court to grant him an evidentiary hearing in the last appeal. And, I think that he did those three things in his August 21st motion, and I think it was made just as clear at the hearing following that motion. The district court and surely the prosecutor understood that he wanted to represent himself at trial. And that's what the district court essentially found in its post-conviction order denying Ely post-conviction relief but the court concluded it would not have been successful if raised on direct appeal.
> …
>
> I disagree with the District Court. I think that there is a reasonable probability the issue would have been successful if raised on direct appeal because he did assert his right in his August 21st motion.
> …
>
> Defendant requests to represent himself and that request is denied, he doesn't have to keep reasserting it, and he doesn't acquiesce by cooperating with his counsel in his defense.

Filing No. 28 at 3.

In his first motion on August 21, 2012, defendant asked to represent himself 43 days before trial. Ely asked in this motion that the Court dismiss his counsel for lying to him and failing to comply with certain requests. He further stated that the attorney-client relationship had "broken down". Filing No. 10-25 at 105. He filed his second motion to

7

proceed pro se on September 24, 2012, which was six days before trial. Id. at 102. He said he had several complaints against trial counsel. Trial began on October 1, 2012. Following his conviction, his trial counsel filed her appellate brief with three assignments of error: insufficient evidence to convict, erred in granting the State's motion in limine, and erred in giving a certain instruction. There was no mention of ineffective assistance of counsel. The Nebraska Supreme Court affirmed the conviction.

## II.    LAW

### A.  Writ of Habeas Corpus

#### 1.  Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). 28 U.S.C. § 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Williams*, 529 U.S. at 405–06. A state court decision involves an "unreasonable application" when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant

the granting of a writ of habeas corpus." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (internal citations and quotation marks omitted).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court.

### 2. *Strickland* standards

Claims of ineffective assistance of counsel are reviewed under the two-pronged standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner. *Id.* at 687; *see also Bryson v.*

*United States*, 268 F.3d 560, 561 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the Strickland test requires the petitioner to demonstrate that his or her attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. When addressing a claim of ineffectiveness, a court must assess the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In the context of Section 2254 habeas corpus petitions, ineffective assistance of counsel claims are afforded "a substantially higher threshold" of deference that does not focus on "whether a federal court believes the state court's determination [under *Strickland*] was incorrect" but whether the "determination was unreasonable[.]" *Knowles*

10

*v. Mirzayance,* 556 U.S. 111, 123 (2009). Additionally, "because the *Strickland* standard is a general standard[,]" state court decisions are given "doubly deferential judicial review[.]" *Id.*

In *Strickland v. Washington,* the United States Supreme Court stated, "[i]in any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688.

"An application for a writ of habeas corpus can only be granted if the applicant has exhausted all of the available state court remedies." *Bell-Bey v. Roper,* 499 F.3d 752, 756 (8th Cir. 2007); *see also* 28 U.S.C. § 2254(b)(1)(A). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).

### 3. AEDPA

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant a state prisoner habeas relief on a claim that the state court adjudicated on the merits unless the state court decision was ". . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court . . .. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

Worthington v. Roper, 631 F.3d 487, 496–97 (8th Cir. 2011) (internal quotation marks and citations omitted). See Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential Antiterrorism and Effective Death Penalty Act ("AEDPA") standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.'").

The Eighth Circuit also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." Id. at 497 (internal citation omitted). A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." Id. The Supreme Court agrees, stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

Harrington, 562 U.S. at 86.

"[C]learly established Federal law" includes only "the holdings" of the decisions of the U.S. Supreme Court. White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotation marks and citations omitted). Under § 2254(d)(1), a habeas petitioner may obtain relief (1) "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme

Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts"; or (2) "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (quoting *Williams*, 529 U.S. at 413).

The state court ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 572 U.S. at 419. In short, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington*, 562 U.S. 86). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

### 4. PROCEDURAL DEFAULT

"An application for a writ of habeas corpus can only be granted if the applicant has exhausted all of the available state court remedies." *Bell-Bey*, 499 F.3d at 756; *see also* 28 U.S.C. § 2254(b)(1)(A). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Nebraska, "one complete round" ordinarily means that each habeas claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court. *See Akins v. Kenney*, 410 F.3d 451, 454 (8th Cir. 2005).

If a habeas claim has not been presented on the merits all the way through the state's appellate review process and is now barred from such presentation, the claim is "procedurally defaulted," not unexhausted. *See Abdullah v. Groose*, 75 F.3d 408, 411

13

(8th Cir. 1996); *Akins*, 410 F.3d at 456 n. 1. "The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue [2016]), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights," however, "the need for finality in the criminal process requires that a defendant bring all claims for relief at the first opportunity." *State v. Sims*, 761 N.W.2d 527, 533 (Neb. 2009). "[A]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *Id.* Additionally, "a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal." *State v. Dunster*, 769 N.W.2d 401, 410 (Neb. 2009). Finally, in 2011, the Nebraska Legislature created a one–year time limit for filing a verified motion for postconviction relief. See Neb. Rev. Stat. § 29–3001(4); *State v. Smith*, 834 N.W.2d 799, 801 (Neb. 2013).

When reviewing a federal habeas corpus petition, a federal court can only consider those claims which the petitioner has presented to the state court in accordance with state procedural rules. See *Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009). Where a state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted). Even

14

where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456.

### III. DISCUSSION

#### A. *Procedural default*

There is no doubt, as determined by the Nebraska Supreme Court, that Ely is procedurally barred from raising this issue. He had an opportunity to raise it in his first appeal and did not do so. He did not raise it himself, nor did he raise the issue to his then counsel. Accordingly, the Court agrees that he was procedurally barred.

#### B. *Claims One and Two*

There are two claims for review under § 2254(d)(1). First, a federal court must determine whether or not the State Court decision involved "an unreasonable application" of United States Supreme Court precedent. Second, the federal court must determine whether the state court decision either "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also*, *Dansby v. Payne*, 47 F.4th 647, 655–56 (8th Cir. 2022).

The first argument made by Ely involves *Faretta*. Ely contends that *Faretta* is virtually indistinguishable from his § 2254 case. Ely argues he was denied his constitutional right to represent himself at trial. Claim two is virtually the same as Claim one. Ely argues that he was denied effective assistance of counsel because of appellate counsel's failure to raise this argument on direct appeal.

"The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477

U.S. 365, 374 (1986). Under the Sixth and Fourteenth Amendments, a criminal defendant is entitled to assistance of counsel at trial and at his first appeal of right. See *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963); *Evitts v. Lucey*, 469 U.S. 387, 392–93 (1985). "'The right to counsel [includes] the right to reasonably effective counsel.'" *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)).

"The Sixth Amendment ... implies a right of self-representation."). *Finch v. Payne*, 983 F.3d 973, 980 (8th Cir. 2020) (quoting *Faretta, supra* at 821). If Ely's request to represent himself is unequivocal and clear, then there must be a *Faretta* hearing. *Id.* (quoting *United States v. Kelley*, 787 F.3d 915, 918 (8th Cir. 2015). "Equivocation, which sometimes refers only to speech, is broader in the context of the Sixth Amendment, and takes into account conduct as well as other expressions of intent." *Bilauski v. Steele*, 754 F.3d 519, 523 (8th Cir. 2014) (citation omitted). *Finch*, 983 F.3d at 980. Courts engage in every reasonable presumption against waiver of counsel. *Brewer v. Williams*, 430 U.S. 387, 404 (1977). In *Faretta*, the United States Supreme Court determined that when a defendant voluntarily and intelligently chooses to represent himself, the state is not permitted to force an attorney on the defendant, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. *Faretta* is clear. A defendant cannot be forced to accept counsel. The judge in *Faretta* first allowed defendant to go pro se. However, prior to trial, the judge held a hearing sua sponte and asked the defendant about hearsay and state law. The judge then determined that defendant must have counsel. The Supreme Court ruled that a defendant has a right to proceed without counsel. In the case before this Court, *Faretta* is distinguishable.

16

In this case, the district court could easily have determined that Ely only wanted a continuance, and he thought going pro se would allow him that option. Ely never told the district court whether his self-representation motion was (1) a stand-alone motion, or (2) conditioned on the grant of a continuance. Defendants must clearly assert their constitutional right to self-representation in order to invoke this right. Thus, if Ely wanted to represent himself even without a continuance, he needed to make clear that his self-representation motion was not conditioned on the grant of a continuance. Defendants must clearly assert their constitutional right to self-representation in order to invoke this right. In this instance, Mr. Ely did not state he wanted to represent himself even if a continuance was not granted.

In *Faretta*, it was clear and unequivocal that defendant wanted to represent himself. The same was not true with Ely. In fact, counsel for Ely spoke with him, and Ely decided not to go pro se. Both defense counsel were present at this meeting. Counsel proceeded with the understanding that Ely did not want to represent himself. The same facts and logic apply to Ely's argument that counsel failed to address this issue on direct appeal. Counsel had no idea that Ely believed this was an issue. He participated in the review of the appeal and the brief, and he did not raise the issue with counsel. Based on these facts, the Court finds there is no unreasonable application of law on this issue.

Accordingly, the Court finds that there was no unreasonable application of the United States Supreme Court precedent, and the state court did not "unreasonably extend(s) a legal principle from our precedent to a new context where it should not apply

17

or unreasonably refuse(s) to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

### Strickland analysis

When reviewing Ely's allegations, the Court notes that the question is whether the Nebraska Supreme Court's application of *Strickland,* which turns on its application of *Faretta*, to the facts of Ely's case was objectively unreasonable. *See, e.g.*, *Bilauski*, 754 F.3d 519. Ely seems to argue that the Nebraska Supreme Court misapplied *Faretta,* and therefore, misapplied *Strickland* to the facts of his case. Ely's claim is reviewed under § 2254(d)(1)'s "unreasonable application" clause. *See Finch*, 983 F.3d at 979–80. The question, again, revolves around whether Ely clearly and unequivocally invoked his right to self-representation.

The Nebraska Supreme Court determined that Ely did not unequivocally and clearly indicate that he wanted to represent himself. Filing No. 10-3 at 7. Ely did indicate that he wanted to represent himself at the August 21st hearing. However, these statements when viewed in the context of his other statements (I want to represent myself and need a continuance of my trial) were not viewed as clear and unequivocal. Ely filed both his motion for self-representation on the same day as a motion for continuance, indicating his self-representation was the reason for the motion to continue. In addition, he said he wanted more time to work on his case. *See* Filing No. 10-20 at 15 ("I feel like if I filed this pro se, I would be able to work on my case as much as I wanted to, as much as I need to."); *Id.* at 16 ("I feel like time - - I don't have enough time left to be doing all that type of stuff. So I feel like I need to go pro se and to get a continuance."); *Id.* at 23 ("I feel I'm not ready to go to trial in 30 days. That's why I'm in here putting in a motion to

dismiss my counsel. I'm not ready to go to trial."))  Further, once the district court denied his motion to continue and to dismiss counsel, he did not request that the court allow him to represent himself.  In fact, in his second motion to dismiss counsel and motion to continue, Ely did not ask to represent himself.   Filing No. 10-25 at 96, 102.

The Nebraska Supreme Court found, based on these facts and assertions, that the request to represent himself was not an unequivocal one.   Filing No. 10-3 at 7.  The Nebraska Supreme Court relied on a 10th Circuit case, wherein the Court stated in *Simpson*,

> We conclude that the court did not violate Mr. Simpson's right to self-representation.  After denying a continuance, the district court did not address the possibility that Mr. Simpson might want to represent himself at that morning's trial.  But if Mr. Simpson wanted to do that, he needed to make his desire clear.  He didn't, for he never told the district court whether his self-representation motion was (1) a stand-alone motion or (2) conditioned on the grant of a continuance.  As a result, the district court did not err in treating the motion for self-representation as conditioned on the grant of a continuance.

United States v. Simpson, 845 F.3d 1039, 1044 (10th Cir. 2017). [2]

The court finds that based on the facts presented in this motion, there is no valid claim under Strickland, and the determination by the state courts were not objectively unreasonable.  Counsel clearly conferred with Ely in the first instance.  It was clear to them that Ely decided he wanted counsel.   Thus, counsel was not ineffective for failing to file an ineffective claim in Ely's direct appeal.  For all the reasons stated herein, the

---

[2] In the alternative, the Nebraska Supreme Court found that Ely asked for some type of hybrid representation, which he is has no constitutional right to have, as it is permissible at the court's discretion. United States v. Lamm, 5 F.4th 942, 950 (8th Cir. 2021) (citation omitted); see McKaskle, 465 U.S. at 183–84. Ely requested "("May I please have counsel appointed to me for help/advisory for when I have questions at my own counsel?")  The district court denied the request for hybrid representation.  Filing No. 10-3 at 9. The Court also found that Ely lacked the legal knowledge to represent himself, and although that is not a constitutional reason to deny his request, it also added to the Nebraska Supreme Court's decision on whether his initial request was clear and unequivocal.  Filing No. 10-3 at 9.

Court finds counsel was not ineffective and no constitutional violations occurred in this regard.

The Court does not in any way intend to denigrate the important, highly important, right to self-representation.  This right is well-imbedded in the law and must be protected.  However, a request for self-representation must be clear and unequivocal, thus preventing a judge from having to guess at the defendant's intent.

## IV.  CONCLUSION

The Court finds that the Nebraska Courts did nothing contrary to law nor does the Court find an unreasonable application of law.   The facts are basically undisputed, and the Petition did not rebut any of the factual determinations by clear and convincing evidence.  There has been an adjudication in this case and a hearing was performed in the Nebraska District Court.  As a result of the findings by this Court, and for the reasons stated herein, there is no reason for an evidentiary hearing before this Court, and Ely's habeas petition is dismissed.

Dated this 22nd day of April, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge